535 P.2d 621

**ARIZONA GAME AND FISH DEPARTMENT, Appellant,**

v.

**ARIZONA STATE LAND DEPARTMENT, Appellee.**

**No. 2 CA–CIV 1786.**

Court of Appeals of Arizona, Division 2.

May 20, 1975.

Rehearing Denied June 26, 1975.

Review Denied Sept. 18, 1975.

Bruce E. Babbitt, Atty. Gen., by Frank J. Sagarino, Asst. Atty. Gen., Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen., by Jack L. Lansdale, Jr., Tucson, for appellee.

## OPINION

### HOWARD, Chief Judge.

Appellant applied for a permit to appropriate the waters which flow intermittently in Papalote Wash, a tributary of the Sopori Wash which is in turn a tributary of the Santa Cruz River. The waters were to be used to construct a reservoir and store water for wildlife and recreational purposes. Washes like the Papalote and the Sopori form the principal source of recharge to the upper Santa Cruz Basin.

A hearing was held on appellant's application. Evidence at the hearing revealed that the Upper Santa Cruz Valley is economically the most significant groundwater basin in Arizona, but its limited supply is insufficient to satisfy the demands of those who presently depend upon it. In 1954, the State Land Commissioner declared the area a critical groundwater area and thereby froze pumping of water for agriculture at its then present level. Nevertheless, pumping by the copper mines and the City of Tucson increased substantially. Currently, it is estimated that between 110,000 and 150,000 acre feet of water are pumped per year; the annual rate of recharge is approximately 40,000 acre feet of water per year. The discrepancy between the two figures results in a substantial annual decrease in the level of the water table. The loss of water which would result from appellant's reservoir was estimated to be about 680 acre feet per year or approximately 1.7 percent of the total annual recharge of the upper Santa Cruz Basin. Appellee found that the proposed use would not conflict with any existing rights of prior appropriation and would not be a menace to public safety. Nevertheless, pursuant to A.R.S. § 45–143(A), appellee rejected appellant's application because the creation of "another charge on the already over-burdened supply in the area does not

appear . . . to be in the best public interest . . . ."

Appellant poses two questions: (1) whether appellee lacks the authority or discretion to reject the application to appropriate waters where the protests came from downstream users of underground waters; (2) whether appellee abused its discretion in disallowing the application to appropriate waters. Assuming, though not deciding, that appellant may sue another state agency,[1] both questions must be resolved against appellant.

■ The claim that appellee is generally without discretion to review applications to appropriate water has been rejected on several occasions. See, Stewart v. Verde River Irr. & Power Dist., 49 Ariz. 531, 68 P.2d 329 (1937); Parker v. McIntyre, 47 Ariz. 484, 56 P.2d 1337 (1936). Appellant claims, however, that because the protesters had no vested rights in the water to be appropriated appellee could do nothing but approve the application. We do not agree. Were the protesters appealing appellee's decision to the superior court, appellant's claim would have merit. See, A.R.S. § 45–154; Ernst v. Superior Court, 82 Ariz. 17, 307 P.2d 911 (1957). However, in view of the facts that appellee is empowered to "administer all laws relating to the . . . appropriation of waters of the state," (A.R.S. § 37–102(A)), that appellee is authorized to "take evidence relating to . . . any matter which he has the power to investigate or determine" (A.R.S. § 37–132(B)) and that there is no limitation on who may file protests with appellee, we must reject the claim that because the protesters in this case were not prior appropriators appellee was required to act perfunctorily.

■ Appellant's claim that appellee abused its discretion is founded on the fact that the application, if granted, would re-

---

1. See, Department of Registration and Education v. Aman, 3 Ill.App.3d 784, 279 N.E.2d 114 (1972), aff'd 53 Ill.2d 522, 292 N.E.2d 897 (1973); Camp v. Board of Public Works, 238 S.C. 461, 120 S.E.2d 681 (1961). The question of the ethical propriety of the Attorney General representing appellant and appellee is beyond the scope of this court's review.

sult in a loss of 1.7 percent of the total annual recharge of the upper Santa Cruz Basin. To accept appellant's claim would require this court to hold that appellee could reject an application which would result in a 10 percent loss, but must approve 10 applications each draining one percent of the total annual recharge of an area. Such a position is logically untenable. We can find no abuse of appellee's discretion, especially when one remembers that the upper Santa Cruz Basin is a critical groundwater area.

Affirmed.